# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### ROCK ISLAND DIVISION

LAURA EBERLIN,

    *Plaintiff,*

v.

DEERE & COMPANY, MARA SOVEY
DOWNING,

    *Defendants.*

Case No. 4:25-cv-04139-SLD-RLH

## ORDER & OPINION

Laura Eberlin, a former employee of Deere & Company, filed this gender-discrimination suit in August 2025. She accused Deere of compensating her less than her male counterparts and of retaliating against her for speaking out against that practice. Deere answered the complaint two months later, and the Court adopted the parties' proposed discovery schedule. As relevant here, the schedule established a March 2, 2026 deadline to amend the pleadings.

Eberlin now seeks leave to amend her complaint. The proposed second amended complaint asserts the same three claims: sex discrimination in violation of Title VII and the Illinois Human Rights Act, a violation of the Equal Pay Act, and retaliation. But it includes new allegations about the pay disparity between Eberlin and a male employee, David Ottavianelli. Deere opposes the amendment, arguing that the deadline to amend pleadings has elapsed, that Eberlin was not diligent in seeking leave to amend, and that the amendment would be futile. The Court disagrees, so leave to amend will be granted.

## BACKGROUND

Eberlin worked for the John Deere Foundation—a non-profit arm of Deere that awards grants to charitable organizations who seek to alleviate hunger and poverty. (Doc. 13 at 3.) Her first amended complaint alleges that, sometime in 2020, she and other foundation staff began advocating for salary increases. (Doc. 13 at 4.) This was prompted when Deere increased the salary of other employees who—although employed in similar roles—shouldered less responsibility. (Doc. 13 at 4.) Eberlin also alleges that she was compensated less than her male predecessor at the foundation, Nathan Clark. (Doc. 13 at 12.) Eberlin's concerns largely fell on deaf ears, however, and the raise she sought never came. (Doc. 13 at 5.) In July 2024, Eberlin's boss—Mara Downing, a defendant here—accused her of leaking confidential information to Clark. (Doc. 13 at 6.) In the wake of those accusations, Eberlin was reassigned and ordered to report to David Ottavianelli—a long-time Deere employee who had recently been transferred to the foundation. (Doc. 13 at 6.)

Eberlin opposed the transfer, expressing her disagreement with Ottavianelli's view of the foundation and history of insensitive remarks. (Doc. 13 at 6–7.) Eberlin also reported that Ottavianelli had engaged in "sexist behavior," which included "man-splaining," "criticizing [Eberlin's] work ethic", "undermining her at meetings," and "acting as though he was in control of" the foundation's budget. (Doc. 13 at 7.) Another employee corroborated Eberlin's complaints about Ottavianelli, and Eberlin advised her to lodge a formal complaint through Deere's official channels. (Doc. 13 at 7.) Despite repeated requests to be transferred, Eberlin continued to report to Ottavianelli until November 13, 2024—the day she resigned. (Doc. 13 at 8.)

2

Coincidentally, Deere fired Ottavianelli "days later." (Doc. 13 at 8.) When Eberlin asked to rescind her resignation, Deere denied the request—despite its history of allowing other employees to do so. (Doc. 13 at 8.) A month later, Deere announced that it would be hiring a new president of the foundation; Eberlin applied for that position, but her application was rejected. (Doc. 13 at 9.) The candidate Deere *did* select, according to Eberlin, performed the same work as Eberlin but was less qualified. (Doc. 13 at 10.) Eventually, Eberlin secured new employment at the University of Iowa's Center for Advancement. (Doc. 13 at 10.) Eberlin alleges that Deere contacted the university and asked that Eberlin be shielded from any work on projects involving Deere, citing conflict-of-interest concerns. (Doc. 13 at 10.) The extent of Deere's association with the University of Iowa meant that this prohibition tied Eberlin's hands at her new role. (Doc. 13 at 11.)

Eberlin's proposed second amendment complaint includes new allegations about the pay disparity between her and Ottavianelli. (*See* Doc. 18 at 7.) She alleges that they had similar qualifications, (Doc. 18 at 7); that he was paid in excess of the salary "grade" to which he was assigned, (Doc. 18 at 11); and that his "total compensation was 181% of Ms. Eberlin's and 113% of the current female President of the Foundation," (Doc. 18 at 11). According to Eberlin, these allegations amount to "evidence showing that [she] suffered from illegal pay discrimination." (Doc. 17 at 1.) And on her telling, most of it was only recently produced by Deere in discovery. (Doc. 17 at 2.)

Deere sees things differently. It asserts that this information has been available to Eberlin since it responded to her first request for production in mid-November 2025. Even so, Deere says, Eberlin had enough information to amend her complaint following Downing's February 26, 2026 deposition. But Eberlin did not seek leave to amend until three months later. This delay, Deere insists, is an independent ground to deny leave to amend. And regardless, leave should be denied because Eberlin's allegations about Ottavianelli's compensation were not included in her initial charge with the IDHR and therefore remain unexhausted.

## LEGAL STANDARD

Rule 15 governs the amendment of pleadings. *See* Fed. R. Civ. P. 15, so Eberlin's motion understandably invokes Rule 15 to justify her amendment. But Deere's response pivots to Rule 16, which controls the modification of scheduling orders. *See* Fed. R. Civ. P. 16(b)(4). Rule 16 supplies the relevant standard here, Deere argues, because the scheduling order imposed a March 2, 2026 deadline to amend pleadings. Eberlin's amendment requires a change to that schedule and is thus an implicit request to modify it.

To Deere's credit, the Seventh Circuit has approved of district courts "apply[ing] the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) [are] satisfied." *Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). A Rule 16 scheduling order "may be modified only for good cause," Fed. R. Civ. P. 16(b)(4)—an inquiry that probes the "diligence of the party seeking amendment." *Alioto*, 651 F.3d at 720. Rule 15, by contrast, instructs courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15

4

thus embodies a strong preference in favor of amendments. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 521 (7th Cir. 2015). But the preference falls away when, among other things, the movant has engaged in undue delay, the amendment would be prejudicial, or it would be futile. *See Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001).

## DISCUSSION

Deere asks the Court to deny leave to amend because Eberlin waited too long after receiving information about Ottavianelli's compensation. And in any event, Deere says, leave is inappropriate because Eberlin's claims fail as a matter of law. The Court disagrees on both counts.

## I.     Eberlin's Amendment Satisfies Rule 16's Good Cause Standard

Deere responded to Eberlin's first request to produce documents in November 2025. In doing so, it disclosed Ottavianelli's "pay grade," "job title," and "performance reviews." (Doc. 19 at 4.) And during Downing's deposition, she spoke at length about those subjects. (Doc. 19 at 4.) Eberlin responds that Deere's discovery responses about Ottavianelli have "remain[ed] confused, inconsistent[,] and full of contradictions." (Doc. 22 at 2.) She also asserts that Deere did not provide Ottavianelli's *actual* compensation until April 13, 2026. (Doc. 22 at 3.)

All agree that Eberlin's amendment comes after the deadline to do so has elapsed. But the record does not demonstrate a lack of diligence on her part. Indeed, she received some information about Ottavianelli in November 2025; she deposed Downing about that information three months later, in February 2026; she issued supplemental discovery requests three business days after the deposition, to which

5

Deere responded in mid-April, and again in mid-May; and Eberlin sought leave on May 28, 2026. Simply put, this is not the track record of a party who has been dragging their feet or failing to act on material information until the eleventh hour. *See Thorsen v. Community School Dist. 300*, No. 20-cv-50132, 2023 WL 11984010, at *2 (N.D. Ill. Dec. 19, 2023) (finding party was diligent when he engaged in ongoing discovery aimed at the subject of his new allegations).

Deere makes valid arguments why Eberlin could have moved to amend sooner. Perhaps she could have issued her supplemental requests before Downing's deposition, or maybe she could have sought leave to amend in April 2026, immediately upon learning of Ottavianelli's actual compensation. But Rule 16 does not impose a least-restrictive-means standard that asks whether the party seeking amend could, in a hypothetical world, have acted sooner. *See, e.g.*, *E-Z Dock, Inc. v. Snap Dock, LLC*, No. 1:21cv-02761, 2023 WL 1783678, at *4 (S.D. Ind. Feb. 6, 2023) (finding seven-week delay between receipt of documents and motion for leave "not unreasonable"); *Chen v. Mayflower Transit, Inc.*, 159 F. Supp. 2d 1103, 1107 (N.D. Ill. 2001) (permitting motion to amend when "filed promptly after counsel completed his investigation"). And imposing such an exacting standard would be anathema to the strong preference for deciding cases on the merits. *See Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004) (reaffirming the "federal policy of deciding cases on the basis of the substantive rights involved rather than on technicalities"). Rule 16 presents no barrier to Eberlin's amendment.

## II.    The Amendment Satisfies Rule 15's Standard, Too

Deere also opposes Eberlin's amendment on futility grounds. An amendment is futile when it would not survive a motion to dismiss, *see Runnion*, 786 F.3d at 520— an inquiry that asks whether the amended complaint states a plausible claim for relief, assuming the allegations are true and the inferences favor the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Deere correctly observes that "a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). "At the very least," that means the charge must be "reasonably related" to Eberlin's complaint—that is, it "should involve the same conduct and implicate the same individuals." *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 525 (7th Cir. 2008). According to Deere, Eberlin's proposed amendment violates these principles. True, her IDHR charge implicated Ottavianelli, but only with respect to his misconduct toward another female employee; it did not say anything about Ottavianelli's salary. Likewise, her charge accused Deere of sex-based discrimination with regard to compensation; but it only identified the former president of the foundation (Clark) as a comparator, not Ottavianelli.

More likely than not, Deere's argument shrinks the "reasonably related" standard a touch too far. Eberlin's proposed second amended complaint adds neither new defendants nor claims; it adds factual allegations to bolster the sex-discrimination and Equal Pay Act claims in her previous complaint. And those claims implicate the same conduct (discriminatory compensation practices) and the same

individuals (Deere, Clark, Ottavianelli, and Eberlin). Yes, the charge may not identify Ottavianelli's salary as evidence of Deere's unlawful compensation practices. But Deere cites no authority to suggest that an IDHR charge alleging pay discrimination must name every possible comparator. And as Eberlin observes, the federal rules do not require plaintiffs "to identify all possible comparators in [their] complaint[s]." *Kellog v. Ball State Univ.*, 984 F.3d 525, 531 (7th Cir. 2021).

In all events, Deere's statute-of-limitations and exhaustion arguments are not properly resolved on a Rule 15 motion to amend. Indeed, courts routinely find that "futility arguments made in opposition to the filing of an amended [complaint] are often better suited for consideration in the context of a motion to dismiss." *Chen v. Yellen*, No. 3:20-cv-50458, 2021 WL 5005373, at *3 (N.D. Ill. Oct. 28, 2021) (collecting cases); *see also Shambaugh & Son, L.P. v. Reichhart*, No. 1:23-cv-00213, 2023 WL 8597383, at *1–2 (N.D. Ind. Dec. 11, 2023) (finding that a futility analysis would be "premature because it would be better addressed in a motion to dismiss."); *Clark v. Deere & Co.*, No. 1:22-cv-1405, 2023 WL 2815922, at *2 (C.D. Ill. Apr. 6, 2023) (explaining, in a similar context, that the futility question is "better suited for more robust briefing (i.e., a motion to dismiss and response thereto)"). This case is no exception. Accordingly, Deere may renew its futility arguments at the appropriate time—whether via a motion to dismiss, a motion for summary judgment, or otherwise.

## CONCLUSION

IT IS THEREFORE ORDERED that Eberlin's Motion for Leave to Amend, (Doc. 17), is GRANTED. The Clerk is DIRECTED to docket [18] as Eberlin's Second Amended Complaint.

*So ordered.*

Entered this 24th day of June 2026.

s/ Ronald L. Hanna

Ronald L. Hanna
United States Magistrate Judge